# UNITED STATES BANKRUPTCY COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | **Case No. 22-03452** |
| | ) | |
| **Lucci Restaurant Group, LLC,** | ) | **Hon. David D. Cleary** |
| | ) | |
| Debtor. | ) | **Chapter 11 (Subchapter V Small Business)** |

## SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of Debtor and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions appears at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY _____.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE FILED WITH THE COURT BY _____, 2022, EITHER ELECTRONICALLY ON THE COURT'S WEBSITE AT www.ilnb.uscourts.gov, OR BY MAILING IT TO THE COURT AT THE FOLLOWING ADDRESS:**

> **Clerk, U.S. Bankruptcy Court**
> **219 S. Dearborn St., 7th Floor**
> **Chicago, IL 60604**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____, 2022, AND WILL BE CONDUCTED ELECTRONICALLY USING ZOOM FOR GOVERNMENT AT https://zoomgov.com/; THE MEETING ID IS _____ AND THE PASSCODE IS _____.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

**June 22, 2022**
**Richard N. Golding**
**The Golding Law Offices, P.C.**
**500 N. Dearborn St., 2nd Floor**
**Chicago, IL 60654**
**(312) 832-7885**

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

Debtor is one of several guarantors of an SBA-guaranteed loan made by Huntington National Bank to Bobby's Lincoln Park, LLC, which operated a restaurant that is no longer in business. Other guarantors of the Huntington National Bank loan to Bobby's Lincoln Park, LLC are the debtors in the related bankruptcy cases of Agim Arifi, Case No. 22-03457, and Bashkim and Fatima Arifi, Case No. 22-03458.

Pursuant to a judgment entered in Case No. 21-cv-01304 in the United States District Court for the Northern District of Illinois, Bobby's Lincoln Park, LLC was indebted to Huntington National Bank in the amount of $2,379,643.39 as of March 31, 2022.

In the related bankruptcy case of Agim Arifi, Case No. 22-03457, Court authority was obtained for the sale of the debtor's residence, which had been mortgaged to Huntington National Bank to secure Agim Arifi's guaranty. The sale closed on June 14, 2022, and Huntington received net proceeds in the amount of $416,252.28 pursuant to the Court's order. Accordingly, the balance due on the Huntington debt is $1,963,391.11.

Reference is made to the Plans of co-guarantors Agim Arifi, Case No. 22-03457, and Bashkim and Fatima Arifi, Case No. 22-03458, for the treatment of Huntington National Bank's guaranty claims under those plans.

The guaranty of the Huntington debt that was executed by this Debtor is unsecured. Accordingly, Huntington holds a general unsecured claim in this case in the amount of $1,963,391.11.

The only lien granted by this Debtor is the lien held by the Small Business Administration ("SBA") on its EIDL (Economic Injury Disaster Loan) proceeds. Debtor proposes to pay the SBA's claim in the amount of $150,000 in the ordinary course of business and in accordance with its terms. Accordingly, the claim is unimpaired.

In addition to Huntington National Bank's general unsecured claim of $1,963,391.11, there are additional general unsecured claims against this estate totaling $71,920.39. Pursuant to the terms of Subchapter V of Chapter 11, Debtor proposes to pay its disposable income over a three-year period in order to satisfy its debts under its Plan.

2

## ARTICLE 1
## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1. Nature of the Debtor's Business.

Debtor operates a restaurant located at 695 Deerfield Road in Deerfield, Illinois.

### 1.2. History of Business Operations of the Debtor

This restaurant, like all restaurants, was adversely affected by the COVID-19 pandemic. At present, however, the business environment and operations for the restaurant have improved, with a reasonable likelihood for enhanced revenue in the future as the pandemic continues to come under better control.

### 1.3 Filing of the Debtor's Chapter 11 Case.

On March 25, 2022, the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court for the Northern District of Illinois, Eastern Division. This case has been consolidated for procedural purposes with the companion cases of Debtor's co-guarantors, i.e., Agim Arifi, Case No. 22-03457, and Bashkim and Fatima Arifi, Case No. 22-03458.

### 1.4. Legal Structure and Ownership.

Debtor is a limited liability company owned by affiliated debtors Agim Arifi (50%) and Bashkim Arifi (50%).

### 1.5. Debtor's Assets.

In general, the significant assets of the Debtor include the following:

| Asset | Valuation |
|-------|-----------|
| Bank accounts | 185,000 |
| Security deposit/landlord | 39,000 |
| Food/beverage inventory | 11,000 |
| Furniture, fixtures, & equipment | 10,000 |
| Office equipment and supplies | 2,500 |
| Work/catering van | 35,000 |

### 1.6. Debtor's Liabilities.

The Debtor will have administrative claims arising in this Chapter 11 case, estimated not to exceed $106,000, including $55,624.34 in claims entitled to priority under

3

§503(b)(9). Huntington National Bank holds a general unsecured claim in this case in the amount of $1,963,391.11 based on Debtor's guaranty of the loan made to Bobby's Lincoln Park, LLC, which was also guaranteed by the debtors in the related cases of Agim Arifi, Case No. 22-03457, and Bashkim and Fatima Arifi, Case No. 22-03458. In addition to Huntington's general unsecured claim, there are additional general unsecured claims against this estate totaling $71,920.39. For purposes of this discussion, we therefore treat the balance of Debtor's general unsecured claims as $2,035,311.50.

### 1.7.   Events Leading to the Filing of the Bankruptcy Case.

Debtor suffered business reverses characteristic of all restaurants during the COVID-19 pandemic. This case was triggered by Huntington National Bank's aggressive action in the District Court, Case No. 21-cv-01304, seeking and obtaining summary judgment against Bobby's Lincoln Park LLC, the principal obligor on Huntington's loan, which was guaranteed by this Debtor and the debtors in the affiliated cases. In the complaint for judgment on the guaranties, Huntington also sought to foreclose against all real estate given as collateral. As a result, Debtor and its co-obligors have sought relief in this Court under Subchapter V of Chapter 11.

### 1.8.   Significant Events During the Bankruptcy Case.

- Debtor's member, Agim Arifi, received court authority to sell his residence, which had been mortgaged to Huntington National Bank to secure his guaranty. The sale closed on June 14, 2022, and Huntington received net proceeds in the amount of $416,252.28 pursuant to the Court's order.
- Plan negotiations have continued but have not, as yet, resulted in a consensual plan
- Richard Golding has been employed and is serving as Debtor's attorney.
- Mr. Golding has utilized the services of David P. Leibowitz and Linda Green, of Law Offices of David P. Leibowitz, LLC, as "of counsel" to The Golding Law Offices, P.C., to assist him in the preparation of Debtor's Plan
- Debtor continues to review and revise its budget of income and expenses going forward so as to develop and maintain a predictable and dependable stream of disposable income to fund its Plan

### 1.9.   Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

# ARTICLE 2

## THE PLAN

Under the Bankruptcy Code, the Debtor's Plan is required to describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

### 2.1 Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full.  If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense.  Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment. *There will be post-petition administrative expenses payable to professionals and to the Trustee*

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | variable | To be paid on ongoing basis in accordance with ordinary business practices and terms |
| Professional fees, as approved by the Bankruptcy Court | $45,000 | Payment upon the later of: (i) Bankruptcy Court approval, or (ii) the Effective Date of the Plan |
| Clerk's Office Fees | $-0- | N/A |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $55,624.34 | To be paid on the Effective Date of the Plan |
| Trustee | $5,000 | Payment upon the later of: (i) Bankruptcy Court approval, or (ii) the Effective Date of the Plan |
| TOTAL | $105,624.34 | |

6

B.    Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Amount Owed | Treatment |
|---|---|---|
| Internal Revenue Service WT-FICA | $14,746.48 | Debtor plans to object to this claim, as it has already been paid |

## 2.2    Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.    Classes of Secured Claims – Class 1

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

The only Secured Claim in this case is that of the Small Business Administration ("SBA"), which holds a lien on its EIDL (Economic Injury Disaster Loan) proceeds to secure its $150,000 EIDL loan. Debtor proposes to pay the SBA's claim in the ordinary course of business and in accordance with its terms. Accordingly, the claim is unimpaired, as set forth in the chart below.

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Small Business Administration claim secured by EIDL loan proceeds | No | Not impaired | To be paid in the ordinary course of business in accordance with its terms |

B. Classes of Priority Unsecured Claims – NONE

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment. *There are no priority claims under §§ 507(a)(1), (4), (5), (6), and (7) of the Code in this case.*

C. Class[es]of General Unsecured Claims – Class 2

There is one class of general unsecured claims, Class 2, consisting of the $2,035,311.50 in allowed general unsecured claims in this case. General unsecured Claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

Debtor shall distribute payments totaling $36,000.00 to creditors holding general unsecured claims, payable in quarterly installments of $3,000.00, that sum being equal to 100% of the Debtor's projected disposable income over the three-year period subsequent to confirmation of the Plan. Such payments shall be distributed to unsecured creditors holding allowed general unsecured claims pro rata, by the Debtor if the Plan is confirmed consensually, and by the Subchapter V Trustee, after deduction of proper compensation to such Trustee, if the Plan is confirmed without the consent of the creditors. **General unsecured claims are impaired by the Plan.**

The following chart summarizes the Plan's proposed treatment of Class 2, which contains general unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 2 | General Unsecured Class | impaired | Quarterly Pymt = $3,000<br><br>Pymts begin in the first quarter after confirmation<br><br>Pymts end 3 years after confirmation<br><br>Estimated percent of claims paid = 1.77% |

### D.  Class[es] of Equity Interest Holders – Class 3

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company ("LLC"), the Equity Interest holders are the members.  The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders, which is Class 3 under this Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 3 | Equity Interest holders: Agim Arifi (50%) Bashkim Arifi (50%) | unimpaired | Equity Interest holders will retain their membership interests under the Plan |

## 2.3.  **Estimated Number and Amount of Claims Objections.**

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. The Debtor anticipates filing an objection to the claim of the Internal Revenue Service if the claim is not withdrawn.

## 2.4.  **Treatment of Executory Contracts and Unexpired Leases**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.  Debtor intends to assume its Executory Contracts (which includes its unexpired leases). Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. If you object to the assumption of your unexpired lease or executory contract or to the proposed cure of defaults, if any, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time. The contracts and leases to be assumed are set forth below:

| Counterparty to contract/lease | Type of contract/lease | Proposed cure of defaults, if any |
|---|---|---|
| Deerfield VCI LLC P.O. Box 77776758 Chicago, IL 60677-6758 | lease of real estate located at 695 Deerfield Rd, Deerfield, IL 60015 | No defaults |
| AA Service Co. 550 Anthony Trail Northbrook, IL 60062 | contract for HVAC service term ends 12/31/2022 | No defaults |

Ralph Weiner & Associates          insurance finance package          No defaults
720 Astor Lane                               annually
Des Plaines, IL 60019                    term ends 10/16/2022

### 2.5.    Means for Implementation of the Plan.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

Debtor will maintain an account from its monthly income in which it shall deposit a sum not less than $1,000.00 per month during the term of this Plan so as to fund the quarterly payments required by the Plan. Quarterly, Debtor will disburse an amount equal to not less than $3,000.00 to holders of allowed unsecured claims, pro rata. If the Trustee is still serving, Debtor will disburse that sum to the Trustee who may then disburse it to unsecured creditors pro rata net of any applicable Trustee's fee. Such payments will be made pursuant to Section 2.6 of the Plan.

### 2.6.    Payments.

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Trustee pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

### 2.7.    Post-Confirmation Management.

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| Agim Arifi | Chef/Member | $4,583.33 (gross) |
| Bashkim Arifi | Member | $4,583.33 (gross) |
|  |  |  |

### 2.8.    Tax Consequences of the Plan.

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or*

***Advisors.***

Debtor does not anticipate tax consequences as a result of this plan as any debt forgiven will not be considered income under the applicable provisions of the Internal Revenue Code.

### 2.9. <u>Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan</u>

Debtor has provided projected financial information. Debtor's projections are set forth in Exhibit 1.

## ARTICLE 3
## <u>FEASIBILITY OF PLAN</u>

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1.   <u>Ability to Initially Fund Plan</u>.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as Exhibit 2.

### 3.2.   <u>Ability to Make Future Plan Payments And Operate Without Further Reorganization</u>.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Debtor will adjust its budget of expenses such that it will be able to provide $3,000.00 per quarter towards the funding of its Plan for the 36-month period following confirmation.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to The Debtor's Projections.**

## ARTICLE 4
## <u>LIQUIDATION ANALYSIS.</u>

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A

liquidation analysis is attached hereto as Exhibit 3.

## ARTICLE 5
## DISCHARGE.

**5.1.  Discharge.  If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in §1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of the Code, and all other debts allowed under section 503 and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of the Code.

## ARTICLE 6
## GENERAL PROVISIONS.

**6.1.    Title to Assets.**

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first.  Except as provided

in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2.    Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3.    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.    Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5.    Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6.    Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the

13

proposed modifications after notice and a hearing.

### 6.7. **Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7
## ATTACHMENTS

The following documents accompany the Plan:

[ ]     Debtor's Assets at Fair Market Value, annexed as Exhibit ____.

[ ]     Debtor's Liabilities, annexed as Exhibit ____.

[X]     Financial forecast for the Debtor, annexed as Exhibit 1.

[ ]     Debtor's most recent financial statements issued before bankruptcy, annexed as Exhibit ___.

[ ]     Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit ____.

[ ]     Summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit ____.

[ ]     Executory Contracts and Unexpired Leases, to be Assumed annexed as Exhibit ___.

[ ]     Executory Contracts and Unexpired Leases to be Assumed and Assigned, annexed as Exhibit ___.

[ ]     Executory Contracts and Unexpired Leases to be Rejected, annexed as Exhibit ___.

[X]     Tables showing the amount of cash on hand as of the Effective Date, and the sources of that cash, annexed as Exhibit 2.

[X]     Liquidation Analysis, annexed as Exhibit 3.

## ARTICLE 8
## DEFINITIONS

**9.1.**    The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2.    Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3.    Administrative Convenience Class:**  A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.    Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against the Debtor's estate under Chapter 123, Title 28, United States Code.

**9.5    Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.    Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or deemed filed pursuant to § 1111(a) of the Code or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.    Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.    Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**9.9.    Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.    Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.    Bankruptcy Court**: The United States Bankruptcy Court for the Northern District of Illinois.

**9.12.    Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.13.    Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.    Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Lucci Restaurant Group, LLC is the Debtor-in-Possession.

**9.15    Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.    Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.    Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.    Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19.   Confirmation Hearing**: The hearing to be held on _____, 2022 to consider confirmation of the Plan.

**9.20.   Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.   Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.   Debtor** and **Debtor-in-Possession**:  Lucci Restaurant Group, LLC, the debtor-in-possession in this Chapter 11 Case.

**9.23.   Disputed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.   Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.   Effective Date**:  The date that is 30 calendar days following the date on which the order confirming this Plan becomes a Final Order.

**9.26.   Equity Interest**: An ownership interest in the Debtor.

**9.27.   Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.   Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.   IRC**: The Internal Revenue Code

**9.30.   Petition Date**:  March 25, 2022, the date the chapter 11 petition for relief was filed.

**9.31.   Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.   Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.   Reorganized Debtor**: The Debtor after the Effective Date.

**9.34.   Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.   Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.   Trustee**:  Matthew Brash, the trustee appointed pursuant to 11 U.S.C. §1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.   Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

LUCCI RESTAURANT GROUP, LLC,
Debtor and Debtor-in-Possession

By:   _/s/ Richard N. Golding_
        One of Its Attorneys

Richard N. Golding (ARDC #6299876)
The Golding Law Offices, P.C.
500 N. Dearborn St., 2nd Floor
Chicago, IL 60654
T: (312) 832-7885
F: (312) 755-5720
Email: rgolding@goldinglaw.net

Lucci Restaurant Group, LLC DIP
Projected Income Statements

EXHIBIT 1

|  | Sept 2022-Aug 2023 | Sept 2023-Aug 2024 | Sept 2024-Aug 2025 |
|---|---|---|---|
| Gross Sales | 2,700,000.00 | 2,780,000.00 | 2,860,000.00 |
| Less Sales Tax | 216,000.00 | 222,400.00 | 228,800.00 |
| Total Sales | 2,484,000.00 | 2,557,600.00 | 2,631,200.00 |
| | | | |
| Cost of Goods Sold | 844,560.00 | 869,584.00 | 894,608.00 |
| | | | |
| Gross Profit | 1,639,440.00 | 1,688,016.00 | 1,736,592.00 |
| | | | |
| Operating Expenses | | | |
| Advertising | 12,420.00 | 12,792.60 | 13,176.38 |
| Bank Service Charges | 525.00 | 540.75 | 556.97 |
| Credit Card Discounts | 74,520.00 | 76,755.60 | 79,058.27 |
| Equipment Rental | 3,600.00 | 3,708.00 | 3,819.24 |
| Commissions | 18,033.84 | 18,574.86 | 19,132.10 |
| Insurance | 14,500.00 | 14,935.00 | 15,383.05 |
| Laundry & Uniforms | 36,000.00 | 37,080.00 | 38,192.40 |
| Licenses & Fees | 4,600.00 | 4,738.00 | 4,880.14 |
| Professional Fees | 36,000.00 | 37,080.00 | 38,192.40 |
| Repairs & Maintenance | 24,840.00 | 25,585.20 | 26,352.76 |
| Rent | 185,088.00 | 185,088.00 | 185,088.00 |
| Salaries: Management | 475,000.00 | 489,250.00 | 503,927.50 |
| Salaries: General | 412,000.00 | 424,360.00 | 437,090.80 |
| Supplies | 162,000.00 | 166,860.00 | 171,865.80 |
| Taxes: Payroll | 111,780.00 | 115,133.40 | 118,587.40 |
| Telephone | 5,464.80 | 5,628.74 | 5,797.61 |
| Utilities | 51,000.00 | 52,530.00 | 54,105.90 |
| | | | |
| Total Operating Expenses | 1,627,371.64 | 1,670,640.15 | 1,715,206.71 |
| | | | |
| Net Income | 12,068.36 | 17,375.85 | 21,385.29 |

See Note on Following Page

## EXHIBIT 2 – **Cash on hand on the Effective Date**

Cash on hand on the Effective Date:          $125,000

Less –

     Amount of Administrative Expenses payable
     on effective date of Plan          $106,000

     Amount of statutory costs and charges      $ 0

     Amount of cure payments for executory contracts      $ 0

     Other Plan Payments due on Effective Date      $ 0

         Balance after paying these amounts…..………$19,000

The sources of the cash the Debtor will have on hand by the Effective Date are estimated as follows:

     $125,000      Cash in the Debtor's bank account now

Foot Notes

*Management salaries includes those of
restaurant managers, chefs, sous chefs, and events manager
and are enlarged because of the shortage of staff employees
and increased salaries to retain the employees.

## EXHIBIT 3 – **Liquidation Analysis**

[Pursuant to Section 1190(1)(B) of the Bankruptcy Code]

### *Debtor's Estimated Liquidation Value of Assets*

**Assets**

| | |
|---|---|
| a. Cash on hand | $185,000 |
| b. Accounts receivable | $0.00 |
| c. Inventory | $11,000 |
| d. Office equipment and supplies | $2,500 |
| e. Furniture, fixtures, & equipment | $10,000 |
| f. Work/catering van | $35,000 |
| g. Building & Land | $0.0 |
| h. Customer list | $0.00 |
| i. Lawsuits or other claims against third-parties | $0.00 |
| j.  Other intangibles (such as avoiding powers actions) | $0.00 |
| *Total Assets at Liquidation Value* | $243,500 |

**Less:**

| | |
|---|---|
| Secured creditors' recoveries | $150,000 |
| **Less:** | |
| Chapter 7 trustee fees and expenses | $40,000 |
| **Less:** | |
| Chapter 11 Administrative Expenses | $50,000 |
| **Less:** | |
| Priority claims, excluding Administrative Expense claims | $55,624.34 |
| (1) Balance for unsecured claims | $0.00 |
| (2) Total dollar amount of unsecured claims | $2,035,311.50 |

| | |
|---|---|
| ***Percentage of Claims Which Unsecured Creditors Would Receive or Retain in a Chapter 7 Liquidation:*** | 0% |
| ***Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:*** | <u>1.77</u>% |

***Creditors will receive more under the Plan than in a Chapter 7 liquidation***